# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 2, 2011

Lyle W. Cayce
Clerk

No. 10-50446

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

GONZALO BECERRA-VALADEZ,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas,
Midland Division
7:09-cr-00293-RAJ-ALL

Before REAVLEY, GARZA, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Gonzalo Becerra–Valadez ("Becerra") was convicted by a jury of illegal entry into the United States after deportation, pursuant to 8 U.S.C. § 1326(a), and was sentenced to five years probation. Becerra now appeals his conviction and sentence, arguing that his rights under the Sixth Amendment's Confrontation Clause and Fifth Amendment's Due Process Clause were violated when documents from his alien file ("A-File") containing alleged testimonial

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50446

statements were admitted into evidence without an opportunity for him to confront and cross-examine the declarants.  We disagree and AFFIRM Becerra's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On October 29, 2009, Officer Jason Wilson stopped a car driven by Becerra.  Becerra was stopped for exceeding the speed limit.  Wilson approached the vehicle and asked Becerra for his driver's license.  Becerra informed Wilson that he did not have a driver's license or any other form of identification save a Mexican identification card.  Becerra admitted to Wilson that he and his passenger (Becerra's wife) were not legally present in the United States.  Once Wilson learned of their illegal presence in the United States, he contacted the Bureau of Immigration and Customs Enforcement ("ICE"), issued Becerra a citation, and arrested him.  While in custody, ICE agent Gabriel Escoto met with Becerra to conduct an interview to discover whether Becerra was, in fact, illegally present in the United States.  After Escoto read Becerra his *Miranda* rights, Becerra agreed to waive those rights and admitted that he was a Mexican national who had been previously removed from the United States.

On November 18, 2009, a federal grand jury indicted Becerra for illegally returning to the United States following removal, in violation of 8 U.S.C. § 1326(a).  The indictment alleged that Becerra had been previously deported and removed from the United States and had not received consent to reapply for admission to the United States.

At trial, Escoto testified that an A-File is created in every immigration case regardless of whether the alien is formally prosecuted or is permitted to voluntarily leave the United States without immigration court proceedings.  Escoto stated that each A-File is given a unique number and is kept in the central repository at the National Records Center.  According to Escoto, aliens who are formally prosecuted and ordered removed from the United States by an

2

No. 10-50446

Immigration Judge ("IJ") are escorted to the border and released to the Mexican authorities. The alien's departure is then recorded in an administrative warrant of deportation/removal, otherwise known as a Form I-205. A Form I-205 contains a photograph of the alien, the alien's fingerprint and signature, and the signature of an immigration official indicating that he or she witnessed the alien depart from the United States. Escoto testified that the completed Form I-205 is then placed in the alien's A-File.

Escoto testified that he interviewed Becerra and recorded his statements on Form I-215.[1] During this interview, Becerra stated that he was born in and was a citizen of Mexico; was removed from the United States to Mexico on July 10, 2001; he reentered the United States through Brownsville, Texas on September 9, 2001, and had not applied for consent to reenter the United States. After Becerra reviewed his recorded responses, Escoto witnessed Becerra sign the Form I-215. Following the interview, Escoto ran a search in several ICE databases to corroborate Becerra's statement. Escoto's search revealed that on three prior occasions Becerra had encountered ICE agents, had previously been removed to Mexico, and had never applied for legal admission to the United States.

The Government then moved to admit four exhibits: (1) IJ's order of removal, (2) Becerra's Form I-205, (3) Becerra's waiver of rights form, and (4) Becerra's Form I-215. Escoto testified that Government exhibit 1 was an IJ's order of removal, dated July 9, 2001, indicating that Becerra was ordered to be removed to Mexico following the immigration court proceedings. Although Escoto did not witness Becerra depart from the United States to Mexico, Escoto stated that Government exhibit 2 was a Form I-205 from Becerra's A-File that contained a photograph of Becerra, his fingerprint and signature, and the

---

[1] A Form I-215 is a form used to create a record of a sworn statement by an alien.

No. 10-50446

signature of the immigration official who witnessed Becerra depart from the United States into Mexico on July 10, 2001.

Becerra objected to the admission of all four exhibits on grounds that admission violated his rights under the Sixth Amendment's Confrontation Clause. Specifically, Becerra argued that the Government had not presented a witness that could identify the fingerprints on the Form I-205 as belonging to Becerra, and that Becerra had not been given the opportunity to confront the immigration official who indicated on the Form I-205 that he witnessed Becerra depart from the United States. The district court admitted the Governments' exhibits over Becerra's objection, finding that the exhibits were non-testimonial and that Escoto's testimony established that the documents were obtained from Becerra's A-File.

At the close of the Government's case-in-chief, Becerra moved for judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29. The district court, reviewing the evidence in the light most favorable to the Government, found that a rational juror could find Becerra guilty beyond a reasonable doubt on each of the elements of the offense charged, and denied Becerra's motion. Becerra did not present any evidence in his defense.

Following closing arguments, the jury found Becerra guilty of illegal entry into the United States after deportation, in violation of 8 U.S.C. § 1326(a). The district court sentenced Becerra to five years probation and this appeal followed.

**STANDARD OF REVIEW**

On appeal Becerra challenges the admission of Government exhibits 1 and 2, respectively the IJ's July 9, 2001 order of removal and the Form I-205 warrant of removal. Becerra alleges that both of these documents contain testimonial statements and are subject to the requirements of the Sixth Amendment's Confrontation Clause. For exhibits 1 and 2 to be admissible, Becerra contends that the Government should have produced a witness with personal knowledge

4

No. 10-50446

of the statements made in the challenged exhibits, established that those witnesses were unavailable for trial, or shown that those witnesses had been previously subject to cross-examination. Becerra further contends that his rights under the Fifth Amendment Due Process Clause were violated in that, absent such witnesses, the Government did not satisfy its burden of showing that Becerra's statements contained in challenged exhibits were made knowingly and voluntarily. This court reviews whether the admission of evidence violated the Confrontation Clause *de novo*, subject to harmless error analysis. *United States v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007).

## DISCUSSION

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with witnesses against him." U.S. Cont. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause is violated where the prosecution introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The Court observed, however, that certain statements, "by their nature [are] not testimonial – for example, business records or statements in furtherance of a conspiracy." *Id.* at 56. The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68.

Recently, in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), the Supreme Court revisited the question of what constitutes a testimonial statement. The Court held that the admission of "certificates of analysis"[2] without testimony from the laboratory technicians that prepared them violated the defendant's rights under the Confrontation Clause because the certificates

---

[2] Certificates of analysis are documents prepared by laboratory technicians that confirm or deny whether a substance possessed by a defendant is an illegal substance.

5

were "quite plainly affidavits" submitted to establish a fact, were prepared in anticipation for use at trial, and were "functionally equivalent to live, in court testimony." *Id.* at 2532. The Court held that the certificates were not business or official records because the business records exception to the hearsay rule did not extend to cases where "the regularly conducted business activity is the production of evidence for use at trial." *Id.* at 2538. Nevertheless, the Court observed, documents "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . are not testimonial." *Id.* at 2539-40.

While we have held that a Form I-205 was non-testimonial evidence and that such a warrant may be admitted into evidence without violating the Confrontation Clause, *United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006), we have not had the opportunity to address the issue of whether, after *Melendez-Diaz*, documents contained in an alien's A-File – specifically, Form I-205 and an IJ's order of removal – are testimonial. Because *Valdez-Maltos* relied, in-part, upon one of our earlier decisions that was implicitly overruled by *Melendez-Diaz* and explicitly overruled by *Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010), it is necessary to address the issue of whether, after *Melendez-Diaz*, a Form I-205 and an IJ's order of removal contained in an alien's A-File are testimonial.

In reaching our decision in *Valdez-Maltos*, we relied on two of our earlier decisions: *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1985) and *United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005), *overruled by Martinez-Rios*, 595 F.3d at 586. In *Quezada*, we held that a Form I-205 contained in an alien's A-File was properly admitted under Federal Rules of Evidence 803(8) (public records exception). 754 F.2d at 1194-95. This exception to the general hearsay rule is based upon the principles that "public documents prepared in the discharge of official functions" are presumed trustworthy, "and the necessity of

No. 10-50446

using such documents, [is] due to the likelihood that a public official would have no independent memory of a particular action or entry where his duties require the constant repetition of routine tasks." *Id.* at 1193 (*see generally*, 4 D. Louisell and C. Mueller, Federal Evidence, Public Records § 454).    Therefore, we determined that a Form I-205 was reliable and admissible because an immigration official preparing the warrant has no motivation to do anything other than "mechanically register an unambiguous factual matter." *Id.* at 1194.

Similarly, in *Rueda-Rivera*, this court held that a certificate of non-existence of record ("CNR") was non-testimonial evidence and may be admitted without violating the Confrontation Clause.    396 F.3d at 680. However, following the Supreme Court's decision in *Melendez-Diaz*, *Rueda-Rivera* has been recently overruled.    *Martinez-Rios*, 595 F.3d at 586 (holding that a CNR in a § 1326 case is a testimonial statement, and that its admission, as proof of a defendant's failure to apply for admission to the United States, without testimony of the analyst who prepared the CNR, violated the Confrontation Clause).    However, the holding in *Quezada* has not been overruled.

Therefore, in order to avoid the application of *Valdez-Maltos*, Becerra must show that the holding in that case has been explicitly or implicitly overruled by an intervening Supreme Court decision.  *See Martin v. Medtronic, Inc.*, 254 F.3d 577 (5th Cir. 2001) ("[A] panel of this court can only overrule a prior panel decision if 'such overruling is unequivocally directed by controlling Supreme Court precedent.'").

Although *Martinez-Rios* decided only whether, after *Melendez-Diaz*, the admission of a CNR without the testimony of the analyst that prepared it in a § 1326 case violated the defendant's confrontation rights, this court's observations in that case are instructive.  *Martinez-Rios*, 595 F.3d at 583, 585-86.  In *Martinez-Rios*, we noted that *Melendez-Diaz* relied upon a "key

distinction between records that are kept in the ordinary course of business and those that are specifically produced for use at trial," the latter being testimonial. *Id.* at 586. This court held that because "CNR's are not routinely produced in the course of Government business but instead are exclusively generated for use at trial," the CNR was testimonial and triggered the Confrontation Clause. *Id.*

In this case, Becerra argues that the Form I-205 was testimonial in nature because it was "on its face, an affidavit." He argues that the form "was 'subscribed and sworn to' by himself, and attested to by the examining ICE agent and another witness." However, the Form I-205 at issue here does not contain any language indicating that the form was "subscribed and sworn to" by Becerra or the immigration official. Becerra further contends that both the IJ's order of removal and the Form I-205 were created for use at trial because their primary purpose was to record statements for subsequent criminal prosecutions.

Contrary to Becerra's assertion, Escoto testified that an IJ's order of removal is one possible result of the routine administrative process applicable to an alien who is subject to immigration proceedings. Escoto also testified that an IJ's order of removal provides immigration officials the authority to remove an alien from the United States and that a Form I-205 is used in ICE's regular course of business to document an alien's departure from the United States. Certainly, an official court document, such as an IJ's order of removal, which is created for the purpose of empowering ICE agents to carry out their ministerial duties does not fall within contours of the certificates of analysis at issue in *Melendez-Diaz. See Melendez-Diaz*, 129 S. Ct. at 2538-39 (certificates of analysis – "like police reports generated by law enforcement officials – do not qualify as business or public records for precisely the same reason" – they are not routinely produced in the course of government business, but are produced exclusively for use at trial. (citation omitted)). Similarly, a Form I-205, which must be prepared in every case resulting in a final order of removal, *see* 8 C.F.R. § 241.2,

is produced in the routine course of government business, and not for use exclusively at trial, to memorialize an alien's departure from the United States. It is of no moment that an incidental or secondary use of those documents, generated by interviews and other means, actually furthered a prosecution. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding that statements are testimonial when, *inter alia*, "the *primary* purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution" (emphasis added)).

Moreover, other circuits considering the issue presented here have consistently held that a Form I-205 and similar A-File records are non-testimonial and do not violate the Confrontation Clause. *See United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1034 (9th Cir. 2011) (recognizing that a warrant of removal and an IJ's order of removal are non-testimonial in nature); *United States v. Orozco-Acosta*, 607 F.3d 1156, 1161-64 (9th Cir. 2010) (determining that *Melendez-Diaz* did not apply to a warrant of removal), *cert. denied*, 131 S. Ct. 946 (2011); *United States v. Diaz-Gutierrez*, 354 F. App'x 774, 775 (4th Cir. 2009) (warrants of deportation are non-testimonial and therefore not subject to the requirements of the Confrontation Clause), *cert. denied*, 130 S. Ct. 1560 (2010); *United States v. Burgos*, 539 F.3d 641, 645 (8th Cir. 2008) (concluding that a warrant of deportation is a non-testimonial business record not subject to the requirements of the Confrontation Clause); *United States v. Torres-Villalobos*, 487 F.3d 607, 613 (7th Cir. 2007) (holding the admission of warrants of deportation did not violate defendant's Confrontation Clause rights); *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005) (holding that a warrant of deportation is non-testimonial in nature and not subject to confrontation because it "is recorded routinely and not in preparation for a criminal trial. It records facts about where, when, and how a deportee left the country.").

No. 10-50446

The admission of the IJ's order of removal and Form I-205 did not violate Becerra's rights under the Sixth Amendment Confrontation Clause. Therefore, the district court did not err in admitting these documents into evidence.

**CONCLUSION**

For the foregoing reasons, we AFFIRM Becerra's conviction and sentence.