NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2013
Decided July 19, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 11-2667

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 10-30052-001 |
| JOEL MARTINEZ-SANCHEZ, *Defendant-Appellant.* | Richard Mills, *Judge.* |

**O R D E R**

Joel Martinez-Sanchez has filed a direct appeal from his conviction and 72-month sentence for returning to the United States without permission after removal. *See* 8 U.S.C. § 1326(a). The defendant's appointed lawyer believes the case is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We evaluated this *Anders* submission previously but denied counsel's motion in January 2013 after concluding that the appeal presents a nonfrivolous claim arising under the Confrontation Clause of the Sixth Amendment. *See United States v. Martinez-Sanchez*, No. 11-2667 (7th Cir. Jan. 2, 2013). Our order directed the defendant's lawyer to brief the appeal on the merits.

Counsel instead has filed, not a merits brief, but what he labels a "Renewed Motion to Withdraw as Counsel and Supplement to Anders Brief." This new submission thoroughly vets the Confrontation Clause claim, which, the lawyer argues, indeed is frivolous. Once again, therefore, counsel asserts that the appeal should be dismissed. We

construe the lawyer's "renewed motion to withdraw" as a request to reconsider our denial of his *Anders* submission, and, so construed, the motion is granted. We vacate our January 2013 order, grant counsel's *Anders* motion, and dismiss the appeal.

We again recount the background facts. Martinez-Sanchez is a Mexican citizen who came to the United States as a child when his parents entered the country unlawfully. He became a permanent resident under the 1986 amnesty. *See* Immigration Reform and Control Act, Pub. L. No. 99-603, 100 Stat. 3359 (1986). He applied for naturalization in 2001 but then was convicted of conspiracy to distribute marijuana. *See* 21 U.S.C. §§ 846, 841(a)(1). His citizenship application was denied, and he was removed to Mexico in 2004. By 2008, however, he was back in the United States, and that year he was convicted of manufacturing and delivering marijuana. When he completed his sentence, Martinez-Sanchez was taken into custody by immigration authorities.

At his trial on the § 1326(a) charge, the defendant claimed to be an American citizen by birth. Yet on his 2001 application for naturalization, which the government introduced into evidence, Martinez-Sanchez had acknowledged his birth in Mexico and his Mexican citizenship. The government also introduced the order of removal issued in 2004 along with records matched by fingerprints confirming that Martinez-Sanchez had departed the United States on foot in October of that year. And an immigration officer testifying as a custodian of records verified that his own database search had not turned up any record of the defendant having sought or obtained permission to reenter the United States. This testimony was corroborated by a "certificate of nonexistence of record" (commonly called a "CNR") documenting that another, nontestifying custodian also had searched immigration databases but found no record of Martinez-Sanchez having received permission to return to the United States.

The jury found Martinez-Sanchez guilty. The district court calculated a total offense level of 24, starting with a base offense level of 8 and adding 16 levels because the defendant's removal had followed his federal drug conviction for which he was sentenced to more than 13 months in prison. *See* U.S.S.G. § 2L1.2(a), (b)(1)(A)(i). With a criminal history category of IV, Martinez-Sanchez faced an imprisonment range of 77 to 96 months.

In his *Anders* submissions, counsel first evaluates whether Martinez-Sanchez could argue that the jury lacked sufficient evidence to find that he is an alien. As counsel recognizes, however, that contention would be frivolous because a rational jury could rely on the order of removal from 2004 and the admission of alienage the defendant made in 2001 when he applied for naturalization. *See United States v. Sandoval-Gomez*, 295 F.3d 757, 761 (7th Cir. 2002) (concluding that evidence was sufficient for jury to find that defendant intentionally had reentered country without permission where he admitted orally and in

writing that he came back "illegally" and knew he should not have returned); *United States v. García*, 452 F.3d 36, 43 (1st Cir. 2006) (concluding that alien's written confession was enough to establish alienage); *United States v. Galindo-Gallegos*, 244 F.3d 728, 732 (9th Cir. 2001) ("A defendant's admissions that he is an alien, together with a deportation order, suffice to establish alienage.").

Counsel next analyzes whether Martinez-Sanchez might argue that the district court violated his Sixth Amendment right to confrontation by admitting the order of removal and application for naturalization. Counsel correctly concludes that this potential argument would be frivolous because these types of immigration records are not testimonial and thus not subject to the Confrontation Clause. *United States v. Burgos*, 539 F.3d 641, 644–45 (7th Cir. 2008); *García*, 452 F.3d at 41–42.

Counsel similarly discusses the prospect of claiming on appeal that the admission of the CNR violated the Confrontation Clause. According to counsel, that potential argument would be frivolous for two independent reasons. The first reason, we are told, is that the defendant's trial attorney stipulated in writing that the CNR (indeed, everything in the defendant's immigration file) was admissible as a business record. As far as we can tell, however, the parties never filed this stipulation or discussed it in open court, so we do not consider it further. On the other hand, we agree with appellate counsel's second basis for concluding that a confrontation claim resting on the CNR would be frivolous: The CNR was cumulative of live testimony from the custodian of records, so any error in admitting the document was harmless.

In *Burgos* we concluded that CNRs are not testimonial. 539 F.3d 645. After *Burgos*, however, the Supreme Court held that a written "certificate of analysis" was testimonial when offered to establish that a questioned substance was cocaine. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). That holding has prompted two courts of appeals to overturn circuit precedent and conclude that CNRs *are* testimonial because they are created for trial and used to prove a fact necessary for conviction. *See United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1034 (9th Cir. 2011); *United States v. Martinez-Rios*, 595 F.3d 581, 585–86 (5th Cir. 2010). We have yet to address this issue, however, that does not prevent us from concluding that a potential argument about the admissibility of the CNR would be frivolous. *See United States v. Webster*, 628 F.3d 343, 345–46 (7th Cir. 2010); *United States v. Lopez-Flores*, 275 F.3d 661, 662–63 (7th Cir. 2001). Martinez-Sanchez did not object to the admission of the CNR, and if he had, we still would evaluate whether any confrontation violation was harmless. *See United States v. Walker*, 673 F.3d 649, 658–59 (7th Cir. 2012). Here the testifying custodian described his own, fruitless database search for evidence that Martinez-Sanchez had received permission to reenter the United States, so any potential error in driving home the point with a CNR would have been harmless. *See Valdovinos-*

*Mendez*, 641 F.3d at 1034 (concluding that introduction of CNR was harmless where immigration agent had testified about her own database search); *Martinez-Rios*, 595 F.3d at 587 (concluding that introduction of CNR was harmless where defendant had admitted to entering country without documentation and agent's search of immigration records did not turn up form granting permission to enter country).

Apart from these potential arguments about the trial evidence, counsel also considers whether Martinez-Sanchez could contend that portions of the prosecutor's closing argument constituted reversible error. While cross-examining the custodian of records about the defendant's immigration file, the defendant's lawyer implied through his questions that the multitude of birth dates appearing in records for Martinez-Sanchez impugned the quality of the agency's record-keeping. The prosecutor might have used his redirect or called another witness to clarify the origins of the conflicting dates, but instead he waited until closing argument and simply asserted that the defendant had been the source of those dates. Martinez-Sanchez objected to that comment, and the district judge instructed the jury to disregard it. The prosecutor also vouched for this same witness as a "very credible, upstanding employee of the Department of Homeland Security," but this time the district court overruled the defendant's objection.

Both remarks were improper. A prosecutor may not assert as fact what is not in evidence, *United States v. Klebig*, 600 F.3d 700, 718–20 (7th Cir. 2009); *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000), and neither may a prosecutor imply that the jury should believe a government witness because the prosecutor knows that witness to be credible, *United States v. Adams*, 628 F.3d 407, 418 (7th Cir. 2010); *United States v. Cornett*, 232 F.3d 570, 575–76 (7th Cir. 2000). Still, in view of the record as a whole, *see United States v. Olson*, 450 F.3d 655, 673–74 (7th Cir. 2006), we agree with appellate counsel that it would be frivolous to contend that these comments deprived Martinez-Sanchez of a fair trial. The district judge told the jurors to disregard the first comment and also instructed them on their duty to determine witness credibility. *See United States v. Persfull*, 660 F.3d 286, 297 (7th Cir. 2011); *Cornett*, 232 F.3d at 576. And the prosecutor too, after vouching for his witness, immediately added that it was the jury's task to decide if the witness was credible, rendering his comment innocuous in context. *See United States v. McMath*, 559 F.3d 657, 667 (7th Cir. 2009).

Counsel finally evaluates whether Martinez-Sanchez could challenge his below-guidelines prison sentence as unreasonable and concludes that this potential claim would be frivolous. The district court considered the mitigating arguments made by counsel at sentencing and shortened Martinez-Sanchez's prison term to account for time served in state prison. Counsel has not identified any ground to rebut the presumption that this below-guidelines sentence is reasonable, *see United States v. Jones*, 696 F.3d 695, 699 (7th Cir. 2012); *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009), nor can we.

In his Rule 51(b) response, Martinez-Sanchez proposes to argue on appeal that the district court should have instructed the jury that records showing periods of residency in the United States can be used to establish citizenship. Residency does not confer citizenship, so the defendant would not have been entitled to this incorrect instruction even if he had requested it. *See United States v. White*, 698 F.3d 1005, 1019 (7th Cir. 2012). And Martinez-Sanchez did not object to the district judge's definition of an alien as a person who is not a natural-born or naturalized citizen or offer his own definition, so we would review for plain error. *See* FED. R. CRIM. P. 30(d); *United States v. Hanna*, 630 F.3d 505, 511 (7th Cir. 2010). The district judge correctly stated the law, *see* U.S. CONST. amend. XIV § 1, so there could not have been error, plain or otherwise.

Accordingly, we GRANT counsel's Renewed Motion to Withdraw as Counsel and Supplement to *Anders* Brief, and VACATE our briefing order of January 2, 2013. Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.