# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-4373

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAYMOND RYALS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06-CR-99-S—**John C. Shabaz**, *Judge.*

ARGUED OCTOBER 22, 2007—DECIDED JANUARY 10, 2008

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Raymond Ryals received a staggering 365-month prison sentence for brokering the sale of an ounce of crack cocaine—a job that earned him $50. The sole issue in this direct criminal appeal is whether the district court abused its discretion by refusing to appoint Ryals new counsel for his sentencing hearing. The motion for new counsel was timely, but the district court did not make an adequate inquiry into the breakdown in communication between Ryals and his lawyer. We therefore conclude that the district court abused its discretion and remand the case for resentencing.

## I. BACKGROUND

The drug deal that led to Ryals's arrest and prosecution was straightforward. Police officers in Beloit, Wisconsin directed a confidential informant to wear a wire and buy an "onion" of crack from Ryals (an onion is an ounce). Ryals recommended a seller to the CI, the CI agreed and paid Ryals, and Ryals obtained and delivered the crack. Ryals was charged with distributing cocaine base, 21 U.S.C. § 841(a)(1), and a jury found him guilty after a one-day trial.

No indication of Ryals's dissatisfaction with his appointed counsel came out until about two months after he was convicted. At that time he and his attorney reached an impasse over how to handle his sentencing hearing, which was three weeks away. Ryals wanted to raise a number of sentencing issues, but counsel refused and filed no objection to the presentence investigation report. Ryals then instructed his lawyer to file a motion to withdraw. The motion was brief, and summed up: "Mr. Ryals informed me that he wishes to seek other counsel to represent him at sentencing." For reasons that are not clear to us, the district court did not take up the motion until the sentencing hearing.

At that hearing the district court first heard from counsel, who stated that Ryals "informed me that he thought that I made certain choices during the course of his trial which were inappropriate. He has indicated to me that he does not have any confidence in me as a counsel . . . the long and the short of it, Your Honor, is that he didn't want me to have anything to do with his case from that point on." The district judge asked whether counsel was familiar with the file, and counsel said yes. The judge asked whether counsel was "able to adequately represent this defendant at sentencing this afternoon," and counsel said no: "I say no, Your Honor, because I know expressly that he doesn't want me to represent him."

Rather than follow up on this statement, the court then turned to Ryals, who said, "I don't want him representing me," because "he didn't do a lot of things and he done [sic] a lot of things and let a lot of things be done that I would like to be looked into." Despite these assertions from counsel and from Ryals, the court then concluded that "[counsel] is prepared to proceed regardless of his comments to the contrary," because counsel had rendered adequate assistance at trial, and because there was little that another lawyer could do given the posture of the case. The court then heard Ryals himself make several sentencing arguments—most of which were challenges to his criminal history points—allowed the government to explain their lack of merit, and imposed sentence. When given the chance to speak on his own behalf before the sentence was imposed, Ryals said, "there was [sic] a lot of things that I think I need to talk to another attorney about that went on in this and went on at trial, Your Honor. I mean, and if I proceed with sentencing I would like to just proceed without an attorney at all." The court replied that Ryals could have a new attorney on appeal.

## II. ANALYSIS—DISTRICT COURT ABUSED DISCRETION BY DENYING MOTION FOR NEW COUNSEL

In analyzing whether the district court abused its discretion in denying Ryals's motion for new counsel, we consider several factors, including (1) the timeliness of the motion; (2) whether the district court conducted an adequate inquiry into the matter; and (3) whether the breakdown between lawyer and client was so great as to result in a total lack of communication, precluding an adequate defense. *United States v. Best*, 426 F.3d 937, 947 (7th Cir. 2005); *United States v. Harris*, 394 F.3d 543, 552 (7th Cir. 2005). Additionally, even if the district court

abused its discretion, Ryals is not entitled to a new sentencing hearing unless he shows that the error caused him prejudice, meaning that but for the error, there is a reasonable probability that the sentencing would have produced a different result. *Harris*, 394 F.3d at 554-55; *see generally Strickland v. Washington*, 466 U.S. 668, 694 (1984).

The government contends that counsel's motion to withdraw, which was filed three weeks prior to the sentencing hearing, was untimely. We found a motion for new counsel filed ten days before a sentencing hearing untimely in *United States v. Hall*, 35 F.3d 310, 313-14 (7th Cir. 1994), and punted on the timeliness of a motion filed three weeks before sentencing in a case involving a guilty plea in *United States v. Bjorkman*, 270 F.3d 482, 500-01 (7th Cir. 2001). Here, the government won't even grant Ryals those three weeks. It says that counsel's motion was terse and the reasons behind it did not fully emerge until the hearing itself, so even if the motion was filed three weeks before sentencing, it wasn't *really* filed until the hearing date. But it would be inappropriate to blame this on Ryals: he wanted a new lawyer and told his lawyer to move to withdraw but the lawyer didn't file a very good motion, so Ryals should be penalized? Moreover, even though the timeliness of a motion filed three weeks before sentencing was a close question in *Bjorkman*, here we conclude that counsel's motion was timely, for it appears that Ryals and his lawyer did not have their falling out until they began preparing for the sentencing hearing. The motion to withdraw could not have preceded the breakdown. *See Harris*, 394 F.3d at 552 (suggesting that motion is timely if made at time of dispute with lawyer).

On the second factor, Ryals contends that the district court did not adequately inquire into the dispute between lawyer and client, and we agree. *See United States v.*

*Zillges*, 978 F.2d 369, 371 (7th Cir. 1992). The district judge asked counsel all of two questions: whether he was familiar with the case, and whether he could adequately represent Ryals at the hearing. When counsel unequivocally answered "no" to the second question, bells and whistles should have gone off. The court should have inquired further, asking why counsel could not carry on, what had caused the dispute between lawyer and client, and whether the breakdown in their relationship was beyond fixing. *See Bjorkman*, 270 F.3d at 501 (court did not merely seek to elicit statement of general satisfaction with counsel or dismiss matter in conclusory fashion); *United States v. McKenna*, 327 F.3d 830, 843-44 (9th Cir. 2003) (court held lengthy *in camera* hearing, asking "specific questions" and receiving "detailed answers"). Moreover, unless there was a good reason for delay, the court should have taken up the matter soon after the filing of the motion, rather than waiting three weeks until the day of the sentencing hearing—a course that suggested that the motion's denial was a foregone conclusion because there would have been insufficient time to appoint a new lawyer for a hearing on the same day. In this regard it is significant that Ryals was not, by all indications, trying to delay his sentencing, *e.g., United States v. Mooneyham*, 473 F.3d 280, 292 (6th Cir. 2007), or casually rejecting the latest in a series of appointments, *e.g., United States v. Mentzos*, 462 F.3d 830, 839 (8th Cir. 2006). This was his first indication of dissatisfaction with any appointed lawyer, and it was based on a genuine and unbridgeable disagreement about the course of the representation. These points suggest that this was a matter to be taken up quickly and seriously. But when the district court turned to the motion it did not even follow up on counsel's answer; instead, it heard a paragraph's worth of transcript from Ryals, and then denied the motion outright.

This leads to the third factor, whether communication between lawyer and client had completely broken down. We believe that it had. Ryals and his attorney were not simply disputing a tactic or two and otherwise collaborating on his defense, as in *United States v. Huston*, 280 F.3d 1164, 1168 (7th Cir. 2002)—they were standing apart from each other with folded arms. The transcript reveals that Ryals essentially represented himself at the sentencing hearing, with very little participation from counsel. Indeed, when the court asked counsel for his views on the appropriate sentence, counsel seemed surprised and said, "I'm assuming that I've still not been relieved." Counsel's scant participation in the sentencing is significant because in the "irretrievable breakdown" inquiry, courts consider whether, notwithstanding any disagreement between lawyer and client, counsel was still able to provide a vigorous defense. *Id.*; *see also Best*, 426 F.3d at 947-48; *Bjorkman*, 270 F.3d at 501. But here, counsel's only substantive contribution at the sentencing hearing was this:

> I think that the Court should be entertaining some period of time within the . . . 360-month range given the facts of this case, that is, should the Court go ahead and find that the guidelines are appropriate to impose. I don't need to educate the Court on the law, God knows. However, the guideline ranges are advisory as this Court is well aware and I would be remiss if I didn't remind the Court obviously that it does have some discretion should it see fit to go ahead and lower or impose—lower and impose sentence upon the defendant. I would note that Mr. Ryals was out for all of two months, as I reviewed the file, before he was reincarcerated on this instant charge, your Honor. I'll leave that to

> the Court's determination as it relates to the reasonableness of the sentence and impose the appropriate sentence.

As Ryals points out on appeal, this "argument" did more harm than good by highlighting the fact that he offended soon after being released from prison. That was the government's first point in its own sentencing argument.

We therefore conclude that the district court abused its discretion by denying the motion for new counsel. Ryals is entitled to a new sentencing hearing if this error caused him prejudice, and we find that it did. A more vigorous presentation at the end of the sentencing hearing could well have swayed the district judge to impose a sentence below the advisory Guidelines range of 360 months to life. While Ryals's criminal history is not negligible, he is also a young man who is being put away for 30 years for a $50 part in a minor-league drug deal. He indicated to his probation officer that he still has career aspirations and wishes to go to college, and his PSR shows that he has had problems with addiction to drugs and alcohol. Counsel highlighted none of these points as grounds for a below-Guidelines sentence, nor did he refer to any of the factors set out at 18 U.S.C. § 3553(a). We cannot know for certain that a better argument would have swayed the district court, but we *can* be certain that counsel's argument stood almost no chance of doing so.

### III. CONCLUSION

For these reasons, we VACATE the sentence and REMAND for a new sentencing hearing. Circuit Rule 36 shall apply.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*